May it please the Court, Mr. Martin, Mr. King, Mr. Martin, Mr. Martin, Mr. Martin, Mr. Martin, My name is Ronald Travis and I represent Appellant King. I would like to reserve two minutes of my time for possible rebuttal. That's fine. Thank you. Although we raise six issues in the appeal, it is my intent to discuss first with the Court the second issue, which is the withdrawal of the plea issue. And after discussing that, moving on to the fourth issue, which is the five-level upward departure that was imposed by the Court. It's your time and you can use it anyway. And if you put it in your brief, you will not have waived it. Thank you. Your Honor, I start with the withdrawal of plea decision issue because we submit to the panel that the lack of venue in the Middle District of Pennsylvania means that the entered plea should not have been taken initially. Here's my map.  I have a map of Pennsylvania. And the failure to allow the plea to be withdrawn constituted an abuse of discretion. You addressed the issue in your briefs, if I'm not mistaken, as a matter of jurisdiction. Yes. You are now saying venue. Well, there's a difference. I understand that. And as I reread prior, prior talks about it with respect to venue as opposed to jurisdiction. I don't think there's any question that the offense which was committed is a federal offense. So some federal court has jurisdiction. So there's subject matter jurisdiction. But it's a question of where the prosecution was. All right. So what you're saying is that the Middle District venue was improper in the Middle District of Pennsylvania. Correct. Although there are a lot of disputed facts in this case, the one fact that is not disputed is that all of the sexual contact between the child and Mr. King occurred in the Eastern District of Pennsylvania. The government proceeded on the theory that it was the crossing of the state line with the intent to ultimately engage in sex that allowed the Middle District to be the place of venue. We litigated the intent. We litigated the place that the state line was crossed. But even if the crossing the state line took place in the Middle District and even if it was done so with the intent as found by the court, I think the panel is bound to accept that as true. I'm thinking of a continuing violation. But even before that, he pled guilty to the offense. Isn't the plea of guilty a waiver of any venue objections you may have? I don't believe so. I believe that under the Higgs rationale that Higgs not only applies to jurisdiction but also applies to venue. Can I? But jurisdiction is not waivable and venue is waivable. So I'm not sure I understand where you're going with that, Mr. Trump. Where I'm attempting to go is somewhere it sounds like I'm not going to make much progress. You can't tell from our questions. I understand that. What I was attempting to establish is that there's a case out of the Tenth Circuit called Cryer that was relied on by the judge and also relied on the government as the basis for establishing that the Middle District was the proper place of prosecution. The reality is that when you read Cryer, Cryer says that a 2241C violation is not a two element crime as the government maintained and as the trial court stated that the change of plea is a three element crime. One is the crossing of state lines. Two is with the intent to have sex with an underage person. And three is the actual sex or the attempt to have sex. Now in Cryer- What do you suggest was the purpose of his traveling through the Middle District to go to, I believe it was Buffalo, New York. Correct. What was the purpose of that trip to Buffalo, New York? According to the court's finding, the purpose was to meet up with the mother and the child and to take the child back to the Eastern District of Pennsylvania- For sex. For sex. Well, so wasn't the trip through the Middle District of Pennsylvania for the purpose of engaging in sex with a minor? We don't dispute that, but that's- Do you agree that he went through the Middle District of Pennsylvania? The court has found that he went through the Middle District- Okay, I don't need my map then. I don't disagree with that finding. Well, we did disagree with that finding at the, with the evidentiary hearing on the petition to withdraw, and we did disagree with that finding in the sense that we have argued that there is not a sufficient record to allow the court to make that finding, and we briefed that in our brief. And, but, getting back to Cryer, those two elements, the crossing of the state line with the intent to have sex, are only two of the three elements. There's a third element, according to the Tenth Circuit, and the third element is the actual act of sex or the attempt to have sex. In Cryer, the act was not completed, so it was the attempt, which was the basis for Venue being in the Western District of Oklahoma rather than in the Eastern District of Oklahoma. The position Cryer took, in his case, is the same position the government took here, and that is crossing the state line with the intent, there's only, there are only two elements to the offense. Cryer says that's wrong. There are three conduct elements to the offense. Crossing the state line with the intent, and then the act of sex or the attempt to have the sex. Since there was no act of sex or attempt to have the sex in the Middle District of Pennsylvania, it's our position that the charges were improperly brought in the Middle District. Even if we were to agree with you that Venue was improper, again going back to the waiver issue, isn't Venue waived by the entry of a plea of guilty? I don't believe so in this case because the change of plea proceeding, the judge said there are two elements. Cross the state line with the intent. Did not mention the need to have the act of sex or the attempted act of sex. So at the point in time when he is offering up the plea in the Middle District of Pennsylvania, he's under the impression that those two elements are the only elements. Why does it matter for your purpose? Why does it matter? If I'm correct, then the court abuses discretion in refusing to allow the guilty plea to be withdrawn. But if he waived the Venue, as Judge Fuentes has asked you, what difference does it make if there were two or three elements to the crime? Because the third element that you say Cryer establishes doesn't affect the Venue, does it? The waiver of the Venue, as I understand it, is based upon the fact that he entered the plea. What I'm trying to point out is that he entered a plea that does not cover all three elements of the offense. And in fact, if the waiver is based upon the admissions he made as part of the plea, the only admissions as found by the court are the crossing of the state line and the with intent to have sex. There's absolutely no question. There never was any sexual conduct in the Middle District of Pennsylvania. I still don't know. I'm not sure I fully appreciate your argument under Cryer. Is it true that you're saying that Cryer requires all three acts to occur in one judicial district? No. Cryer seems to say that there can be a continuing violation. But the key to the prosecution is the third act of conduct. That is... How do we know that? Well... At pages 1321 to 1323 of Cryer, the court explains that Venue is appropriate in, quote, any district in which such offense was begun, continued, or completed, end quote. The... The offense here was continued through the Middle District of Pennsylvania. It was completed in the Eastern District. But what I just quoted from Cryer suggests that it all doesn't have to occur in one place. Well... The Cryer court also says, after crossing state lines, any district in which the completion of the crime occurs has Venue. In talking about whether, arguably, the Eastern District, which is the place where Cryer crossed and had the intent but had no sexual contact, the court says Venue might arguably exist at the moment of crossing state lines if the intent and attempt elements were also present. As I read Cryer, Cryer is saying it's not the mere crossing of the lines. The... What the Cryer court points out is that when you look at the legislative history, the legislature said that this was a new sexual offense against children when a person commits a crime after crossing state lines with the intent of committing a sexual offense. So that the crime is defined by Cryer as being the actual sex act or the attempt to engage in the... Well, that's not what the statute says. The statute says traveling interstate with the intent to engage in a sexual act. I mean, your client wasn't pleading guilty to committing the act. He's pleading guilty to traveling interstate with the intent to engage in a sexual act of the minor, correct? That is 2241C is what he entered the plea to. All I'm pointing out to the panel is that Cryer has interpreted that as saying it's not the crossing of the state lines, it's the actual act itself. Well, we, of course, are bound by the statute and not by another court. You've used up most of your time. Did you, oh, you've used up all of your time. Did you have another point you wanted, I mean, yeah, sentencing issue? Did you want to tell us quickly? Yes. We'll extend your time. Thank you. Extend his time three minutes and we'll extend the governor's time three minutes if it needs it. Issue four relates to the five-level upward departure that was done at step two of the Ginter three-step procedure. Did the judge sentence on the basis of a subsequent amendment or did the judge merely reference it as a reason for imposing a five-level increase? He found the factors to support the increase to be, one, the conduct and, two. Yeah, but I know. But can you say I'm going to sentence you on a guideline amendment that's not in effect yet because I think what you did is very bad. Is that what he did or did he just reference it as a means of showing how serious it is? Which it was very serious. He looked at the post-2003 amendments as a factor which he found was not a heartland mainline factor. He did not say, I don't care that it's ex post facto. I'm giving you a 30-year mandatory sentence. No, he did not do that. He looked at the amendment changes and he said that the amendment changes take Mr. King out of the heartland. He looked at Mr. King's conduct and he said Mr. King's conduct takes Mr. King out of the heartland. The problem is he failed to do the second step of the analysis. Once he's identified the factors, he is supposed to, as I understand it, compare the King case with 2241C cases to see whether those factors do, in fact, take the King case out of the heartland mine run of cases. He did not do that analysis and did not point out why it is that those factors are unique or special as to Mr. King and would not apply to other individuals who suffered the same conviction, and that is a 2241C violation. He could have imposed a five-level increase on what he stated, a pattern of sexual abuse. Wasn't that a sufficient reason? He could have done that, but he chose to do it under 5K2.0, and this court has set up specific procedures to be followed when that type of upward departure is going to take place. One, identify the factors, and then two, look and do a comparative analysis of those factors with other cases, and that is what he failed to do. Thank you very much. Thank you. We'll get to one rebuttal. Is that all right with you? Okay. We'll hear from the government. Good morning, Your Honors. May it please the Court. Mr. Travis, my name is Fred Martin, and I represent the United States in this proceeding. I will address the matters that Mr. Travis raised and the order in which he raised them. First of all, with respect to the claim that there was a lack of jurisdiction, I agree with you, Judge Fuentes, in terms of the issue. It really isn't a matter of jurisdiction as much as it is venue, and Cryer does refer to venue and cites 18 U.S. Code Section 3237, which talks about crimes beginning, continuing, and ending in various districts. As far as we're concerned, 2241 is not the first time that Congress has established that type of offense. Probably the grandfather of them all was the Travel Act, 18 U.S. Code Section 1951. Was that before the Mann Act? No, that's different than the Mann Act, Your Honor, but I was just going to lead the Mann Act. That's what I remember from law school. I don't remember that clearly from law school. It's a long time ago, I tell you. You're right. The Mann Act is somewhat of a pattern for 2241, and we believe that the district court correctly concluded and certainly was not clearly erroneous in determining that Mr. King, while he might have started in the Eastern District of Pennsylvania with his travel, certainly went through the Middle District. He did not dispute that he went through the Middle District. I thought he did, but he didn't. He did not, at the time of his guilty plea, he did not dispute that he went through the Middle District of Pennsylvania. In terms of venue, which is the issue that Mr. Travis raises as a jurisdiction issue but now references as a venue issue, but if a timely venue motion had been made on transfer of venue, isn't he right that this should have been in the Eastern District of Pennsylvania? I disagree with Mr. Travis and his three-part analysis of Cryer. I think that the crime requires two elements, the one being the travel and the other having the intent. Ultimately, a criminal act or some unlawful act had to be committed, but it did not have to be committed within the district in which travel took place, and that's typical especially for like a travel act violation. It talks about traveling and then having a crime or having some acts occur after the travel has completed. The travel with the intent is the essence of the crime, isn't it? Our belief is that it's a two element as opposed to what Mr. Travis says, the three elements he adds, either an attempt or the actual criminal act or the illegal sexual conduct, but the travel and traveling with the intent to commit sex as far as we're concerned, and I believe that's what Cryer stands for, are the only two elements as far as we're concerned. What about the sentencing? What do you have to say about the sentencing? Unless somebody wants to pick up on that point. By the way, Your Honor, my map was at 982 of the record. I'm sure it corresponds with the court's map as to— No, my map is from Rand McNally. Well, 982 is a blowup excerpt from Rand McNally,  I've been sitting at home with this old Rand McNally atlas. At least I found a use for it. I never thought that the Middle District would be that important when considering Buffalo, but apparently in this unusual case it is. Well, you're from the Middle District, and you should think it's important. Go ahead. Let's go to the sentencing. With respect to the sentencing, what our belief is is that Judge Jones looked first at the overall pattern of Mr. King's behavior, not just what he did on Thanksgiving Day 2003, but what else he was up to both prior and subsequent to that. And in terms of way prior, the court was concerned about Mr. King having had sex with his own child and also his various Internet outreaches where he sought to become a teacher for young girls with whom he had contact on the Internet, encouraging them to engage in masturbatory activities and other things. So the statute, or rather the sentencing provision upon which the court started was on 2A3.1, which relates to that travel act or to the 2241 violation. Then looking at his overall pattern of behavior, the court found it similar to that which the sentencing commission felt was in need of more serious attention under 2G2.2B4, which is the pattern of sexual behavior. And from that, the court felt that a deviation, an upper deviation of five levels was appropriate. Is there any way, Mr. Martin, of knowing if the district court would have chosen to depart upward by five levels without reference to the subsequent amendment? It's hard to tell. The court did seize upon that language and felt it was an appropriate guide. Again, it's not part of 2A3.1. If it had found some other, but it did find that. But if it did, you would, I guess, I don't know if you would agree, but wouldn't you say that it would probably be an improper sentence or an invalid sentence? Well, for an ex post facto. An ex post facto, yes. I believe that there were. Why is it not an ex post facto problem? An ex post facto problem would have been if the court deviated 11 levels up, which it did not do and had said what I'm going to follow is 2A3.1 as it exists in 2008 or 2009. The court, specifically at Part 108 of the appendix, said that it was not going to get into the ex post facto morass or any difficulties with that, but it did nonetheless consider that Congress had increased penalties for child abuse offenses since 2003. That was something that it took into consideration, but it did not go in lockstep with what the Sentencing Commission had changed as of 2008 and 2009. Did the judge reference the subsequent amendment in imposing that five-level upward departure? It referenced that. They said the court noted that that's what the Sentencing Commission had done, rather, but it did not go 11 levels. It went but five levels, and it was guided by the pattern of sexual behavior or a pattern of misbehavior, rather, under 2G2.2B4, which the court found was more in keeping with the accurate facts of Mr. King's behavior. Whether 2G2.2B4 existed as a five-level departure back in 2003, quite frankly, I do not know. The answer would be in that book, Your Honor, the Sentencing Commission book as of 2003. We keep them all. We have to. We keep every year. Post-Booker, though, isn't this a bit of a semantic debate? I mean, couldn't the judge have just as easily not done a departure of five levels and then considered the very same issues under 3553A and imposed a 30-year sentence? The judge could have done that. In one sense, Judge Hardiman, my job here would be easier had the judge explicitly said that he would do that, but he did not do that. It's his choice, which we think we can defend, and it was his choice to pursue a variance as opposed to, excuse me, his choice to seek an upward departure under 25K.20 as it was applicable to child offense. So we're talking about procedural reasonableness, really, whether that was a valid procedural move to grant an upward departure, and if so, whether that procedural departure, in addition to being procedurally reasonable, whether it ran afoul of the Ex Post facto clause. That's correct, Your Honor. That's how we would view things. If the Court has any other questions on that. I do, actually. I want some guidance from the government and perhaps on rebuttal from your able adversary regarding the application of Georgia v. Randolph to the search of the hard drive of the computer. The good news about the search, Your Honor, in a sense, is that in this particular case, I'm not sure the Court has to confront that issue. While the Dell computer was seized at the time on February 19, 2004, it was not searched. Instead, as Judge Jones found, it was basically brought in, put in mothballs, and then a separate state search warrant was obtained to examine the particular item. But he said he wanted the hard drive. Didn't he say, I want to take out the hard drive? That's exactly what he said. He did protest to the troopers on the scene. And, again, Georgia v. Randolph deals with someone's basic real estate or more general property, whereas a computer we view as something more tangible and certainly smaller in scope. How does that answer the suppression issue? I mean, and seizure. After all, it's not only suppression. It's seizure and search. Somebody says, the owner of the computer says you can take it, and he says, yeah, but the hard drive is mine, and I want to take it. I want that. What right does the government, if the government doesn't have a warrant for it, what right does the government have to have seized it? I think there's a great many things which would affect this court's judgment in that respect. Just tell us one that's dispositive. A computer without a hard drive is like an automobile without an engine. It is the essence of the item. So are you saying that her approval to take the computer encompasses the hard drive? I'm not sure I understand. I don't know that that argument can help you much. I mean, the living room is integral to the house, and the husband in Georgia, or the boyfriend, I forget which, I think it was the husband, in Georgia v. Randolph said, yeah, I know my wife said you're coming in, but this is my house, too, and you're not coming in. So, I mean, don't you have to argue for a distinction between the home being one's castle and personality not being one's castle? That is part of it, and also what is the essence of the item that's being seized. If, for example, there was a disk in the computer or some files that were in the computer, and if Mr. King had said, I want to take out my disk, I want to take out my files, that would have presented an easier problem for these state troopers. Why, if they didn't let him, why would that be easier? In the sense that they could have removed those items from the computer without doing any damage to the computer. Do exigent circumstances play a role here? Because it's kind of silly to think that the information they're going after is in the hard drive, and they're going to say, go ahead and take your hard drive, it's quite all right. It doesn't seem to me that that's the way the police would handle it. They would want to go get a warrant so they would want to keep it because it would be destroyed. To preserve whatever evidence, the hard drive, I mean, I thought that's what you were going to argue. Well, that would be my other way. That's a fallback argument. That would be my other way to avoid. Maybe the main argument, wouldn't it be? If you say it is, Judge, then it is my main argument. Well, no, but you haven't argued it. It's bothering me. In the briefs. Yeah, because I really expected you to say, look, the district court recognized that in the exigency, there was an exigency to preserve whatever evidence the hard drive contained. I thought you would come up right away. We did argue the exigency as one of the reasons for the seizure of the computer. Actually, I thought that's what the police were doing when they took the computer because they then went and got a warrant. Is that the way they did it? That is correct. So they were preserving, as Judge Slover said. As one would in a traffic stop if you take a container out of the automobile and not search it but then get a warrant to search the container that was within the trunk of the car.  Because of Mrs. Larkin's consent. I guess what I'm having difficulty thinking through is why should seizure be different from search? We have an entire body of law regarding consent searches that vitiates any need for a probable cause or reasonable articulable suspicion. You get consent, you get it. Why should a consent seizure be any different than a consent search? Consent seizure still is not of the gravamen of the actual search, the invasion of privacy. Well, I don't know. The Constitution doesn't make a distinction. You're right. It is search and seizure. I might rather be searched than seized. It depends on the nature of the search or the nature of the seizure. And as Judge Slover pointed out, the Fourth Amendment doesn't make any distinction. It does depend on the nature of the item seized. Do you happen to know how easy or difficult it is to remove a hard drive from a computer? Did you check with anyone? There is nothing in the record about it. I believe it takes some undoing, some unscrewing. It depends on my – I did do some research on that by asking the head of our – IT? Yeah, of our IT program. And it depends on how old the computer was. Some of the new ones, you can just take a screwdriver and get the hard drive out. But maybe that wasn't so in the computer. In this case, do you know what year the computer was? All I know, Your Honor, it was a Dell computer, vintage, probably 2003. I wonder what a week has been. And that's the best information that I could provide to this court. Okay. Thank you, Your Honor. Wait a minute. But if it would have been difficult to remove the hard drive, then your argument is, look, she gave consent and it covers the whole thing? Like, you can drive away my automobile. You can't take out the engine. Again, it's the essential character. A computer without a hard drive is virtually nothing and has very little evidential use. It's like the French would say, a day without falling. That's well put, Your Honor. Thank you. With respect to the application of the Randolph case to the seizure of the hard drive, we submit that there is no basis to distinguish Randolph and the holding of Randolph, which clearly says that if there are two people, one says, yes, you may seize this, have this, take this, search this, and the other one says, no, you may not. That you can't ignore. Well, Mr. Travis, what about the need to preserve evidence? I mean, aren't there cases in the Supreme Court that say that there's an exigency when what you need to do is to preserve evidence? And all they were doing is taking the computer with the hard drive so they could get a warrant, which they did ultimately. They didn't search it. I mean, why don't those cases and why doesn't that theory apply here? They had no basis to believe that there was any relevant evidence on the hard drive. Whoa. That's a hard one to convince us of. The record is replete with back and forth between the mother and your client. How can you say that? Well, back and forth. I left out the gory details. There were like five computers. There were like five computers in that house. And they were supposed to assume that this computer actually was not part of the gory details? No. What I'm saying is that the hard drive that was in that computer, there is no information that that is the hard drive on which chats were sent or received with respect to the interaction between Larkin and King. Let me ask you this. If I am walking down the street with a friend of mine and he's carrying a gym bag with his gym clothes and I'm carrying a satchel full of cocaine and I ask him to hold it for me, put it in the gym bag, we walk down the street, 20 minutes later, police come upon us. They know that he's a basketball player and they have reason to believe I'm a drug dealer. They turn to him and say, I'd like to see that bag. Would you mind giving me your gym bag so we could take it down to the station and look at it? He says, sure. It's valid consent, right? Do I have a right before the police take the gym bag to say, oh, hold on a minute. My satchel is in there and I need to get it out of there. Do I have a right to do that? I don't know if you have a right. I would hope you would try to do that. Let's assume I try to, obviously I try to do that. I mean, do the police violate the Fourth Amendment by saying, no, I mean, we have this bag and we have valid consent to take this bag and look at it. How does the Fourth Amendment give me some sort of superseding right to come in and vitiate what is valid consent? Well, all I can say is that under Randolph, isn't that what the United States Supreme Court told us can be done? You have two people. One says, yes, go ahead, you may search. The other one says, I don't care that you got consent from my wife. I think you're right. That is what it says. I guess what I'm struggling with is if I'm remembering my reading of that case, Justice Souter went to great pains in his majority opinion to focus on the fact that this was a home. And the Supreme Court has said the home is one's castle. I guess my large question here is, is the home qualitatively different than a piece of personal property? If no, then I think the rule that you've articulated may control the day. If yes, then it would seem to require a different result. I would agree with that analysis. Obviously, my position is there is no reason to distinguish between the home and the item of personal interest. Well, there's a lot of reasons. One is the practical one of the home is it's intertwined, and that's not true of the computer. But we'll take your thought into consideration. Thank you. When we conference this case. Thank you very much. Thank you. Thank all of you. Thank you. Somebody tell me, where is the mother? Is she in jail? 30 years. She's actually, as I understand it, on appeal here. She was sentenced. She was sentenced subsequent to my client being sentenced. Okay. You don't represent her. No. Okay. Mr. Travis has had problems enough. She received a 30-year sentence. Thank you. In that case. It's up here. Okay. Thank you.